Leroy BELLAMY, Plaintiff-Appellant,

v.

Harold BRADLEY; Sgt. Loafman; George Baxter; S. Mathis; Ms. Watkins; Jim Rose; James Vandever; Richard Tedrow; Capt. Earl Lowe; Ralph Holloway; Donald Adams; & Alvin Carter; in their official capacities, Defendants-Appellees.

No. 81-5714.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 16, 1983.

Decided March 9, 1984.

Leroy Bellamy, pro se.

Joseph J. Hochbein, Graydon, Head & Ritchey, Timothy Black (argued), Cincinnati, Ohio, for plaintiff-appellant.

William M. Leech, Jr., Atty. Gen. of Tennessee, Nashville, Tenn., John C. Zimmermann, J. Andrew Hoyal, II, William Uhl, Asst. Attys. Gen. (argued), Nashville, Tenn., for defendants-appellees.

Before ENGEL and KEITH, Circuit Judges, and PRATT, District Judge.*

KEITH, Circuit Judge.

This is an appeal from a district court judgment which granted appellees' motion for a directed verdict. Appellant filed an action under 42 U.S.C. § 1983 alleging that various prison officials had violated his constitutional rights.

Appellant Leroy Bellamy is a blind inmate incarcerated for life at the Tennessee State Penitentiary. His handicap requires him to be dependent upon fellow inmates

---

* Honorable Philip Pratt, United States District Judge for the Eastern District of Michigan, sitting by designation.

for the performance of daily tasks. With the approval of prison authorities, Bellamy has inmates who serve as "runners" for him. These runners assist Bellamy through the prison by walking one step ahead of him while he held onto their shoulders. They also ran errands for him which he could not accomplish due to his blindness.

Bellamy alleges these runners were the subject of harassment which consisted of refusals to honor runner passes, improper disciplinary write-ups, verbal assaults, and pressure to obtain information about a previous lawsuit Bellamy had filed against prison officials. As a result of this harassment, Bellamy claims that he was denied meals and access to jailhouse lawyers.

Bellamy also contends that his visitors were subjected to a pattern of harassment by Tennessee State Penitentiary personnel. According to Bellamy, his visitors were the subject of unfounded visitation denials, reprimands and expulsions based on fictitious and ex-post facto rules. He also claims several complaints to supervisory officials about these incidents were ignored. This pattern of harassment was allegedly attributable to Bellamy's lawsuit against prison officials for unconstitutional prison conditions.

At trial, Bellamy, along with eight other witnesses, testified regarding the allegations of harassment. The district court thereafter invited and granted appellees' motion for directed verdict. However, the district court did not present an oral or written statement containing its reasons for the granting of appellees' motion for directed verdict. For the reasons set forth below, we affirm the decision of the district court.

■■■ Before commencing a discussion of this case, it is necessary that we indicate that the Court of Appeals was at a disadvantage because the district court did not provide a record of its decision granting the appellees' motion for a directed verdict. A motion for a directed verdict should be cautiously and sparingly granted because it deprives the non-moving party of a deter-

mination of the facts by a jury. *See, e.g., Wilkin v. Sunbeam Corp.,* 377 F.2d 344, 347 (10th Cir.), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 464 (1967). Consequently, a district court, when granting a directed verdict should always provide some type of written opinion explaining the reasons for its decision. This written decision is necessary not only for the parties to the lawsuit; it also enables the appellate court to evaluate the basis of the lower court's action. The Court of Appeals should not have to "second guess" the district court. Some form of a written opinion memorializing the district court's ruling eliminates this problem.

■■■ The standard to be applied in determining the propriety of a grant or denial of a directed verdict is whether without weighing the credibility of the witnesses or considering the weight of the evidence, there is substantial evidence from which the jury could find in favor of the party against whom the motion is made. When considering such a motion, the district court and this court must view the evidence in a light most favorable to the party against whom the motion is made. The court should grant a directed verdict only when it is clear that reasonable men could come to only one conclusion from the evidence. *See, e.g., Coffy v. Multi-County Narcotics Bureau,* 600 F.2d 570, 579 (6th Cir.1979); *Morelock v. NRC Corp.,* 586 F.2d 1096, 1104 (6th Cir.1978); *Wolfel v. Sanborn,* 555 F.2d 583, 593 (6th Cir.1977).

After applying this standard to the present case, we have concluded that the district court was correct in granting appellees' motion for a directed verdict. None of Bradley's § 1983 claims rise to the level which would allow a jury to impose liability upon any of the appellees. However, we shall specifically address each of the appellant's claims.

## I. BELLAMY'S EIGHTH AMENDMENT CLAIMS

### A. Denial of Meals

Appellant Bellamy alleges that he was denied meals as a result of harassment of

his runners by prison officials. This denial of meals, alleges Bellamy, is tantamount to cruel and unusual punishment in violation of the Eighth Amendment.

In support of his claim, Bellamy offered testimony in his own behalf, detailing alleged instances where his runners were either denied access to him so that he could not be escorted to meals or they were subjected to harassment by prison guards when they traveled to Bellamy's cell to escort him to meals. Michael Garrard, Douglas Wheeler, Isaac Boyd and Robert Gadson who were Bellamy's runners also testified regarding alleged harassment they received while attempting to assist him.

■ We recognize that a deprivation of the basic necessities of life, e.g., food, shelter, clothing, by prison officials would undoubtedly be a violation of an inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Newman v. Alabama*, 559 F.2d 283 (5th Cir.1977), *rev'd in part sub nom, Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). However, the testimony presented when viewed in the light most favorable to Bellamy fails to establish that appellees intentionally or negligently deprived Bellamy of his meals to the degree that a jury could find an Eighth Amendment violation. Bellamy testified that he could no longer go to early chow because his runners would no longer escort him due to harassment. The aforementioned runners testified that they were allegedly harassed on several occasions. This harassment was in the form of questioning by prison guards as to the nature of trips they made for Bellamy in their capacity as his runners. There was also testimony that prison guards refused to recognize passes issued to runners which allowed them to travel through the prison on Bellamy's behalf.

The only testimony which tends to show a deprivation of a meal by a specific prison official was presented by runner Isaac Boyd. He testified as follows:

Q. Mr. Boyd, you're at the main state penitentiary?

A. Yes, I am.

Q. From time to time have you acted as a runner or escort for Mr. Bellamy to eat?

A. I do.

Q. On December 28, 1980, did you go to Unit 1 to get him to take him to eat?

A. Yes, I did.

Q. What happened on that occasion?

THE COURT: When was this?

MR. WOODS: December 28, 1980.

THE WITNESS: Well, upon entering the unit, I went to the stick man, Officer Adams—

Q. (Mr. Woods) Defendant Adams?

A. Right. I asked permission to go down the walk to get him out of the cell to lead him to the dining room. I have a chow card for carrying him three times a day.

Q. Early chow?

A. Early chow each meal.

Q. Go ahead.

A. I guess about ten minutes to three. At that time he told me to leave, you know, that I couldn't enter the walk at the time. And I had to wait, so I waited about ten minutes. He never returned to the door, unlock the door and let me down, and I left. I had to eat myself.

Q. As far as you know, did Mr. Bellamy get to eat that day?

A. No, he didn't. I saw him the next day and he asked me what happened and I explained to him why I hadn't come to get him.

Q. Officer Adams wouldn't let you in to get him?

A. Right.

Transcript, pp. 291–293.

This testimony, which is the most expositive of Bellamy's denial of meals claim, was insufficient to establish an Eighth Amendment violation. At best, this testimony shows that Officer Adams strictly enforced the rules and refused to bend them to accommodate Bellamy. Such action, although not compassionate, does not rise to the level of a possible Eighth Amendment

violation that would allow a jury to find § 1983 liability. Consequently, the district court was correct in granting a directed verdict on this claim.

### B. Visitation

There was also testimony which Bellamy asserts provided evidence of harassment of his visitors by prison officials. This alleged harassment also supposedly constituted cruel and unusual punishment in violation of the Eighth Amendment.

The testimony presented on this claim detailed instances where Bellamy's girlfriend, Ms. Julia Black, was denied access to Bellamy after her arrival to the prison or where her visit was terminated early by prison officials. In each instance, prison officials claimed that there had been an infraction by Ms. Black of a prison rule or regulation regarding visitation.

One incident of harassment against Bellamy's visitors allegedly occurred when members of Bellamy's family and Ms. Black visited him in a picnic area on prison grounds. A prison guard, who noticed a tablecloth on a picnic table in violation of prison regulations, requested that the tablecloth be removed. An argument ensued between the guard and Bellamy regarding the removal of the tablecloth. Immediately thereafter, the guard terminated the visit and ordered Bellamy's family to leave the prison grounds.

■ These incidents do not rise to the level of an Eighth Amendment violation. Prison inmates have no absolute constitutional right to visitation. *Newman v. Alabama*, 559 F.2d 283 (5th Cir.1977), *rev'd in part sub nom, Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Limitations upon visitation may be imposed if they are necessary to meet penological objectives such as the rehabilitation and the maintenance of security and order. *Lynott v. Henderson*, 610 F.2d 340 (5th Cir.1980).

■ There were legitimate penological concerns for security in each incident cited by Bellamy as harassment of a visitor. For instance, Ms. Black's visit was terminated because she had brought petroleum jelly into the prison. There was a prison rule which prohibited visitors from bringing petroleum jelly into the prison because inmates may use it to place drugs in their rectums or to have sex with other inmates. This is clearly a legitimate concern for the security and order of the prison. In every other instance cited by Bellamy as harassment of a visitor, there was an infraction of a rule which furthered a legitimate concern of prison officials. Accordingly, the district court's directed verdict on this claim was correct.

### C. Totality of Conditions

It is also urged upon this court by Bellamy that we should employ a "totality of conditions", "cumulative impact", or "complex enforcement" analysis to his claim that prison officials violated his Eighth Amendment right to be free from cruel and unusual punishment. Under this analysis, the court examines the cumulative effect of conditions and practices in a prison to determine if an Eighth Amendment violation exists.

■ The Supreme Court's latest pronouncement in this area occurred in *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1982). The petitioners in *Rhodes* were prisoners who filed a class action suit challenging the practice of "double celling" of inmates by prison officials. The Court held that the practice of double celling did not constitute cruel and unusual punishment in violation of the Eighth Amendment. So long as prison officials provide inmates with "a minimal civilized measure of life's necessities", the requirements of the Eighth Amendment have been met. However, conditions of confinement must not involve the wanton and unnecessary infliction of pain. *Rhodes, supra*, at 347, 101 S.Ct. at 2399.

■ This case, however, does not require such an analysis. The "totality of conditions", "cumulative effect", or "complex enforcement" analysis is employed where there is a lawsuit challenging the

conditions of confinement. Bellamy has not alleged that the conditions of his confinement are a violation of the Eighth Amendment. Instead, he has alleged that certain individual prison officials have violated his rights. Thus, the totality of conditions approach would be inapplicable in this lawsuit.

## II. BELLAMY'S SIXTH AMENDMENT CLAIM

Bellamy argues that he demonstrated at trial that he was denied effective assistance of counsel in violation of the Sixth Amendment. This denial allegedly occurred as a result of: (1) interference with and censorship of his mail from his attorney; and (2) the denial of consultation with two jailhouse lawyers.

We have reviewed the testimony regarding this claim and conclude that the district court was correct in granting a directed verdict. The testimony regarding Bellamy's mail only reveals that prison officials merely opened his mail and does not show that he was denied effective assistance of counsel. No evidence, in the form of testimony or otherwise, was introduced to show how the opening of mail interfered with his Sixth Amendment right to effective assistance of counsel.

Nor does the testimony of the two jailhouse lawyers present the possibility of a Sixth Amendment violation. These inmates testified that prison guards prevented them from visiting Bellamy in his cell in order to consult with him about his pending lawsuit against prison officials. However, it was also established that Bellamy could visit the jailhouse lawyers at the prison law library as he did on several occasions. Thus, there was no Sixth Amendment violation.

Moreover, it was also brought out in testimony that Bellamy did have court-appointed counsel which is further evidence that there could be no Sixth Amendment violation. Obviously, the legal assistance of the two jailhouse lawyers was unnecessary once outside counsel had been appointed.

## III. DEROGATION OF DUTIES BY PRISON OFFICIALS

Bellamy also alleged in district court that Tennessee State Penitentiary supervisory officials should be subject to § 1983 liability because they negligently failed to halt harassment of him by their subordinates. Several witnesses testified that supervisory officials were notified about harassment by prison guards but no action was ever taken. The district court correctly granted a directed verdict on this claim.

In *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir.1982), we held that the § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Hays*, 668 F.2d at 872–74.

Bellamy has made no showing that any of the supervisory officials who were defendants in this case actively participated in or authorized any harassment of appellant. The testimony presented by Bellamy, at best, indicates that some instances of alleged harassment were brought to the attention of prison supervisory officials.

## IV. CONCLUSION

Special considerations undoubtedly must be made for Bellamy because he is a blind inmate. The Eighth Amendment, however, only requires that he be given a minimal civilized measure of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1982). Considerations for the security and order within the prison are countervailing concerns which

must also be balanced against Mr. Bellamy's handicap. At times, the scale will probably tip in favor of one concern at the expense of the other. A review of this record did not disclose the possibility that the scale had become so unfavorably weighted against Bellamy that the appellees could have been possibly held liable for unconstitutional conduct.

Accordingly, the judgment of the district court granting a directed verdict is affirmed.