774 F.2d 1161
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James A. Barnett, Plaintiff-Appellant,
v.
William R. Bell, et al., Defendants-Appellees.
 No. 84-3515
 United States Court of Appeals, Sixth Circuit.
 9/30/85
 
 N.D.Ohio
 AFFIRMED IN PART AND REVERSED IN PART
 On Appeal from the United State District Court for the Northern District of Ohio, Western Division
 Before: KENNEDY and MILBURN, Circuit Judges; and WEICK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff in this prisoner civil rights action appeals a directed verdict as to several defendants and charges error in the jury instructions as to the remaining defendants. Mr. Barnett brought suit under 42 U.S.C. Sec. 1983, charging that his constitutional right guaranteed by the eighth amendment had been violated when he was abused by fellow prisoners while in the Hancock County Jail. Defendants were the County of Hancock; three members of the Board of Commissioners of the County; Sheriff Bell; Sergeant Harvitt, the chief jailer; and five Corrections Officers employed at the time of the abuse.
 
 
 2
 At the close of plaintiff's case, the District Court directed a verdict for Harvitt, the five Corrections Officers, and Bell in his individual capacity. The jury returned a verdict in favor of the County, the Commissioners, and Bell in his official capacity. On appeal plaintiff contends that the jury instructions taken as a whole were misleading and that there were factual issues upon which reasonable minds could find in favor of the plaintiff and against defendants as to whom the District Court directed a verdict.
 
 
 3
 The facts of this case reveal that Barnett was incarcerated as a parole violator in the Hancock County Jail, in Ohio, on December 5, 1979. Barnett is relatively small of stature and mentally retarded. There was evidence that his developmental level resembles that of a six or seven-year old child.
 
 
 4
 Barnett was placed in the upper cell block of the jail, a dormitory-like environment housing several violent prisoners. Harvitt reviewed and approved of his placement. On the second day of Barnett's imprisonment other prisoners in the cell block began assaulting him. A Corrections Officer at the jail observed that he had a black eye and questioned Barnett about his injury. Barnett replied that he had fallen out of bed. He stuck to his story when asked by Harvitt, who admitted doubting Barnett, but who nevertheless returned Barnett to the upper cell block when Barnett declined an offer to be moved. Harvitt again questioned Barnett on December 7 because Harvitt was concerned there might be problems, but Barnett was again returned to the upper cell block. Another prisoner, Yates, asked Harvitt to move Barnett, but this request was not honored. Yates later offered to tell Harvitt how the injury had been sustained if Barnett could first be moved out of the cell block. This request was denied as well.
 
 
 5
 On December 10, Barnett's parole officer came to the jail to serve Barnett with parole violation charges. The parole officer questioned Barnett, at Harvitt's urging, about Barnett's obvious injuries, which by this time included a swollen lip. The parole officer received the same explanation. The parole officer testified that he harbored some doubts as to the veracity of Barnett's account as well. Barnett was nonetheless again returned to the upper cell block after questioning, but was finally removed on December 13, when Harvitt learned that he had been indicted for gross sexual imposition, as Harvitt was then concerned for Barnett's safety.
 
 
 6
 Barnett was placed on the lower cell block on December 13. A fellow inmate, Oler, noticed that Barnett was burned and bruised and requested medical attention for him on December 15. Barnett himself requested medical attention on that day. Because prison personnel classified his need for medical help as a non-emergency, and transport was not readily available, Barnett was not taken to the hospital until the following day. Barnett was asked whether he wished to be taken to the hospital December 15 or whether he would wait until the next day, and he agreed to wait. In the emergency room, he was treated for a healed burn over the sternum, two smaller healing burns on the end of his penis, and bruises over the buttocks.
 
 
 7
 * The central legal issue in this case is the standard for liability in a Sec. 1983 action in which prisoners assault another prisoner. In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court recognized a cause of action for deliberate indifference to serious medical needs of prisoners under Sec. 1983. This cause of action now includes indifference to assaults by prisoners on prisoners. Mere inadvertence or negligence on the part of prison officials in failing to protect a prisoner from assault does not state a claim under Sec. 1983, Little v. Walker, 552 F.2d 193 (7th Cir. 1977), but liability does not depend on direct participation in the acts leading to the injuries. In Smith v. Wade, 461 U.S. 30 (1983), the Court held that the proper standard for punitive damages in a prison assault case was 'evil motive or intent, or . . . reckless or callous indifference' to the beatings experienced by the prisoner, 461 U.S. at 56. The Court noted that there was 'no substantial difference' between the standard for awarding punitive and compensatory damages in that case. Id. at 51. The essential difference, the Court continued, is that punitive damages are discretionary; compensatory damages must be awarded once liability is found. Id. at 52.
 
 
 8
 Where a prison official has actual knowledge of assaults on prisoners by fellow inmates and the ability to prevent them and with actual intent permits the assaults to occur or is callously or recklessly indifferent as to whether they occur, and there is resultant injury to the plaintiff, liability can ensue. A supervisor may not be sued on the theory of respondeat superior alone, however. Rizzo v. Goode, 423 U.S. 362 (1976); Marchese v. Lucas, 758 F.2d 181 (6th Cir. 1985).
 
 
 9
 Therefore, in a cause of action of this kind, plaintiff has the burden of proving that defendants, through deliberate or callous indifference caused either by actual intent or recklessness, failed to protect him from assault while in prison.
 
 II
 
 10
 We first review whether the jury instructions taken as a whole were misleading, the standard for review on appeal. United States v. Grayson, 597 F.2d 1225 (9th Cir. 1979). Counsel for plaintiff argues that the District Court established a higher threshold standard in this case than the Supreme Court adopted in Smith v. Wade, supra. The District Court attempted to harmonize Smith v. Wade and Estelle v. Gamble, supra. The court instructed the jury that the plaintiff had to prove that one or more of the defendants was 'deliberately indifferent to serious threats of harm to plaintiff by other inmates at the Hancock County Jail or was grossly negligent . . ..' The District Court went on to explain that '(d)eliberate indifference and/or gross negligence may be evidenced by recklessness or by actual intent. Reckless means wanton, with indifference to consequences.'
 
 
 11
 The District Court was not in error in instructing the jury in this manner. Counsel for plaintiff requested that the jury be instructed that the standard was callous indifference, egregious failure or gross negligence. Under the instructions the jury could have found for the plaintiff if they found that defendants were grossly negligent in their indifference to plaintiff's injuries. Taken as a whole the instructions were not misleading.
 
 III
 
 12
 The second issue for review is whether the District Court was correct in directing a verdict in favor of Harvitt, the Corrections Officers, and Bell in his individual capacity. The standard to be applied is 'whether there is substantial evidence from which the jury could find in favor of the party against whom the motion is made.' Bellamy v. Bradley, 729 F.2d 416, 418 (6th Cir. 1984). The court must view the evidence in a light most favorable to the plaintiff. Id.
 
 
 13
 We conclude that the District Court was in error in granting a directed verdict as to Harvitt in his individual capacity. The reasons advanced by the District Court were that Harvitt's scope of authority was limited and that he 'exercised concern' for Barnett. A review of the record reveals that Harvitt was responsible for the day-to-day operations of the jail. Any concern he may have shown Barnett does not negate the fact that Harvitt's knowledge of assaults on plaintiff and his authority for plaintiff's placement were such that a jury could have found that his deliberate indifference to Barnett's safety, either through intent or recklessness, resulted in Barnett's injuries. The evidence shows that Harvitt was aware of Barnett's black eye and swollen lip. Harvitt had been asked by another prisoner, Yates, to move plaintiff and told that Yates would tell what really happened to plaintiff once plaintiff was moved. Despite this information, Harvitt did nothing.
 
 
 14
 The District Court's grant of a directed verdict as to deliberate indifference to Barnett's medical needs was not in error. Under Estelle v. Gamble, supra, medical needs that are disregarded must be 'serious' to rise to the level of an eighth amendment violation. The injuries Harvitt and the other officials initially were cognizant of, or had reason to be aware of, were a black eye and swollen lip. Plaintiff had declined medical care for the eye. By the time the officials became aware of his more serious injuries, on December 15, they gave his medical needs prompt attention. His treatment when he did reach the hospital was aspirin and ointment for the burns.
 
 
 15
 We also affirm the District Court's grant of a directed verdict as to the five Corrections Officers. The record is unclear as to which of the five officers were on duty at any given time, and which of them were aware of Barnett's situation. Similarly, the directed verdict as to Bell in his individual capacity is affirmed. It was not established that Bell had any knowledge of Barnett's injuries after the fact.
 
 
 16
 For the reasons stated above, the decision of the District Court is affirmed in part and reversed in part.