Scott Andrew WITZKE, Plaintiff,

v.

Perry M. JOHNSON; C. Patrick Babcock; Jay K. Harness, M.D.; Robert F. Bort, M.D.; and S.W. Lee, M.D., Defendants.

No. G84–455.

United States District Court, W.D. Michigan, S.D.

Feb. 26, 1987.

Ted Swift, Foster, Swift, Collins, & Coey, Lansing, Mich., for plaintiff.

Scott Witzke, pro se.

A. Peter Govorchin, Asst. Atty. Gen., Lansing, Mich., for defendants.

OPINION

ENSLEN, District Judge.

On December 9, 1985 the Court held a hearing at which it decided, in an opinion

rendered from the bench, the various motions for summary judgment that were pending before it at that time. In response to an inquiry at the hearing from counsel for defendants, the Court indicated that it probably would not be issuing the opinion in written form. Since that time, however, the Court has considered the issue some more, and has concluded that given the importance of the issue it discussed and partially resolved at the December 9th hearing, it should issue the opinion in written form and have it published. The following written opinion thus is intended to memorialize the oral opinion the Court rendered at the hearing held on December 9, 1985.

## Introduction

Presently pending before the Court in this case are the parties' various motions for summary judgment. Plaintiff, proceeding *pro se*, moved for summary judgment on July 10, 1985, on all counts of his amended complaint; defendants moved for summary judgment and/or dismissal on all counts on July 22, 1985; and plaintiff moved again, this time represented by counsel, on November 7, 1985, for partial summary judgment as against defendants Bort and Lee on the third count of his amended complaint. For the reasons discussed below, the Court will deny defendants' motion for summary judgment and/or dismissal on all counts as to all defendants. It will also deny plaintiff's motion for summary judgment on all counts as well as his motion for summary judgment on his third count as against defendants Bort and Lee.

## Facts

The following facts are not in dispute. Plaintiff was an inmate within the Michigan Department of Corrections at all times relevant to this action. On April 13, 1984 plaintiff was transferred from the Muskegon Correctional Facility to the Riverside Psychiatric Center at the Riverside Correctional Facility in Ionia. Plaintiff alleges that this transfer was made at his request so that he could receive a psychiatric evaluation. Brief in Support of Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Brief") at 1–2. The Riverside Psychiatric Center ("Riverside") is composed of four wings: 11–1 East (admissions); 11–2 East (treatment); 11–1–West (chronic); and 11–2–West (treatment). When plaintiff arrived at Riverside on April 13, the only wing with open bedspace was 11–1–West, the "chronic" wing. Plaintiff therefore was placed in that wing, and held there for six days, until April 19, 1984, when space opened up in one of the other wings.

Defendant Bort has described 11–1–West as "the 'chronic' unit, 'structured' unit, and 'assaultive' unit." Defendant's Answers to Interrogatories at 4, no. 13. Prisoners placed in 11–1–West generally are those "who are currently mentally ill, have a history of repeated physical violence and who are *currently* considered a serious threat to property and/or the physical well-being of others." Director's Memorandum 1983–3: *11–1–West Unit Policy—Revised* at 2 (emphasis in original). Plaintiff did not satisfy this standard for placement in 11–1–West. 11–1–West, however, apparently is also used to house "overflow patients," defined as patients who are either "mentally ill and transferred to 11–1–W because of lack of bed space on the Admission Unit, or ... [are] free of physically assaultive behavior for a minimum of two months time and designated by the Team as ready for transfer or discharge." *Id.* at 5. Defendant Lee has stated that plaintiff was placed in 11–1–West "[b]ecause of over-census at the hospital." Response to Plaintiff's Interrogatories at 1, no. 3.

Defendants state that plaintiff's transfer to Riverside was made at the request of Sheryl D'Epifanio, a social worker at the Muskegon facility, and with the approval of Regional Administrator Houseworth. As I noted above, plaintiff states that the transfer was made at his request. Regardless of who made the request, plaintiff was transferred to Riverside and placed in 11–1–West on his arrival at the facility. Plaintiff was seen by defendant Bort approximately five hours after his arrival at Riverside and placement in 11–1–West, at which time he requested to be transferred out of

11–1–West, demanded a psychiatric examination, and signed a form consenting to treatment at Riverside. Plaintiff was kept in 11–1–West until April 19, during which time he was confined to his room for twenty hours and fifty minutes per day, allowed few privileges, and, according to defendants, received "the treatment allowed and appropriate for his status."

Plaintiff raises three claims arising out of his treatment by defendants: (1) that his transfer to Riverside without being accorded due process of law violated his rights under the fourteenth amendment; (2) that his placement in 11–1–West similarly violated his right under the fourteenth amendment not to be deprived of his liberty without due process of law; and (3) that defendants' actions violated various state laws. Defendants admit that plaintiff was transferred to Riverside and placed in 11–1–West without benefit of a hearing or other due process procedures, but argue (1) that their actions were in accordance with departmental procedure and did not implicate any of plaintiff's due process rights or rights under state law, and (2) that, for the most part, they cannot be held liable for any violations of plaintiff's rights that may have occurred.

### Analysis

The standard for deciding motions for summary judgment in this circuit is well-known and will not be repeated here. *See Watkins v. Northwestern Ohio Tractor Pullers Ass'n*, 630 F.2d 1155, 1158 (6th Cir.1980); Federal Rule of Civil Procedure ("FRCP") 56(c). The parties' motions and briefs raise many difficult issues of federal and state law, not all of which have been adequately discussed, and the resolution of which depend at least in part on some unresolved factual issues. The Court notes initially that plaintiff's state law claims clearly are not ripe for summary disposition. It is not clear, among other things, what state laws plaintiff is claiming defendants violated, and which defendants, if any, can be held liable for any violations that may have occurred. *See* Plaintiff's Amended Complaint at 6–7; Pre-Trial Order at 7; and Plaintiff's Response to De-

fendants' Motions at 6–8. Plaintiff has alleged sufficient facts to survive defendants' motion to dismiss, however, *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), and defendants have not demonstrated their entitlement to summary judgment on such claims.

Resolution of the parties' motions regarding plaintiff's federal claims is more difficult. After a thorough review of the factual record and the parties' motions and briefs, however, the Court is convinced that summary disposition would not be proper with regard to plaintiff's federal claims. It nevertheless believes that discussion of the legal and factual bases for such claims would benefit both the parties and the Court.

Although it is not clear to the Court that plaintiff's complaint presents two separate federal claims, the parties have treated the claims separately and the Court thus also will do so for purposes of this opinion. In his first count, plaintiff alleges that he was denied due process of law when:

a) he was admitted to a licensed psychiatric hospital without procedural due process and

b) he was not given an adversary hearing and

c) notice of adversary hearing and

d) independent assistance.

Amended Complaint, ¶ 32. He alleges in his second federal claim that he was denied due process of law when:

a) he was taken out of his regular prison setting and

b) he was admitted to a psychiatric hospital and

c) he was forced into a behavior modification/therapy setting and

d) his freedom of movement was severely restricted.

*Id.* at ¶ 36. The Court's view of the case is that plaintiff's claims fall into the following two categories: (1) that he should not have been transferred to Riverside initially, whether for treatment or to receive an evaluation, without having been accorded due process of law; and (2) that even if his initial transfer was proper, whether be-

cause he consented to such transfer or because he was to receive only an evaluation, he should have been accorded due process prior to being placed in 11–1–West. The Court will first discuss whether plaintiff's claims present potential constitutional violations, and then whether defendants can be held liable for such violations.

Resolution of the first issue is governed by the Supreme Court's decision in *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). The plaintiff in *Vitek* had challenged the state's decision to transfer him out of a prison setting to a state mental hospital to receive proper treatment. The Supreme Court phrased the issue presented as whether "the involuntary transfer of a Nebraska state prisoner to a mental hospital implicates a liberty interest that is protected by the Due Process clause," *id.* at 487, 100 S.Ct. at 1260, and if so, whether the plaintiff had been accorded the appropriate due process. It found that the plaintiff could claim a liberty interest from two sources. First, Nebraska state law stated that a prisoner would not be transferred to a mental hospital unless it was determined that he suffered from a mental disease or defect that could not be treated properly in the prison. *Id.* at 489–91, 100 S.Ct. at 1261–62. Second, the Supreme Court found that the plaintiff could also claim a liberty interest independent of any state law, based on the due process clause itself. Rejecting the state's argument that "the transfer of a prisoner to a mental hospital is within the range of confinement justified by imposition of a prison sentence, at least after certification by a qualified person that a prisoner suffers from a mental disease or defect," the Supreme Court found that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual." *Id.* at 493, 100 S.Ct. at 1263. It held that "the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id.* at 494, 100 S.Ct. 1264.

The state argues in defendants' behalf in this case that plaintiff here cannot claim protection under *Vitek* because he was not subject to "involuntary psychiatric treatment" or "mandatory behavior modification." It bases its argument on a purported distinction between "the prisoner's right to withhold consent to treatment (psychotropic or other medication, group therapy, milieu therapy, counseling) and the prisoner's lack of a right to withhold his consent to a particular placement within the prison system." Brief in Support of Motion at 9. The state claims the right to transfer a prisoner, at its discretion, "to the most appropriate custodial setting for his particular needs and requirements," *id.* at 8, even if that setting is the Riverside Psychiatric Center. It argues that a prisoner's rights under *Vitek* are not invoked until it seeks to subject him to involuntary treatment for a mental disease or defect. At that time, the state would move to transfer the prisoner to a mental institution outside the prison setting, and the prisoner would receive appropriate due process guarantees. A prisoner would not be entitled to due process guarantees, however, when he is merely transferred to Riverside and consents to treatment. Defendants' Response to Plaintiff's Motion at 4–10. The state notes that the Supreme Court stated in *Hewitt* that "the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence," *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983), and argues that it properly can transfer a prisoner to Riverside without due process as long as it does not subject the prisoner to involuntary treatment.

■ The Court will first discuss whether plaintiff can claim a protected liberty interest under the due process clause itself, and then will discuss whether he possesses any protected interest under state law. It finds that although there is an inadequate factual basis for it to render a definitive decision

on this issue at this time in this particular case, it must reject the state's "transfer" versus "treatment" distinction. It is clear from the Supreme Court's opinion in *Vitek* that mere confinement in a mental hospital, even absent subjection to "mandatory behavior modification programs" or other involuntary treatment, can " 'engender adverse social consequences to the individual' " and thus implicate liberty interests. *Vitek*, 445 U.S. at 492, 100 S.Ct. at 1263, *quoting Addington v. Texas*, 441 U.S. 418, 425–26, 99 S.Ct. 1804, 1808–09, 60 L.Ed.2d 323 (1979). The Supreme Court stated explicitly that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual." *Vitek*, 445 U.S. at 493, 100 S.Ct. at 1263. Although the Supreme Court emphasized that the prisoner in the case before it had been subjected to involuntary treatment as well as to involuntary confinement, I do not find that its decision necessarily is limited to cases where a prisoner is both involuntarily confined and treated. *See Baugh v. Woodard*, 604 F.Supp. 1529, 1534–35 (E.D.N.C. 1985). Confinement alone in a psychiatric institution can create a stigma sufficient to implicate a liberty interest. It appears to the Court that a prisoner who has been incarcerated at Riverside would suffer a "stigma" within the prisoner body, *see id.* at 1535 ("undisputed evidence [reveals] that a prisoner returning to the general prison population from a mental health unit are viewed as 'bugs' by other inmates [and] ... are ostracized and exploited by other prisoners"), and, moreover, upon release would suffer the double stigma of being both an ex-con and a "mental." *See id.* It strains the state's credibility, moreover, for it to argue that prisoners transferred to Riverside either are not subject to treatment or are subject to treatment only if they so consent. *See id.* Mere confinement at the institution may constitute a form of treatment. *See* M.C.L. § 330.-1400(e). The stigma that, as the Supreme Court found in *Vitek*, attaches when a prisoner is transferred to a mental institution, particularly when combined with the possibility or probability that the prisoner will be subject to "treatment" at the institution, is sufficient to invoke a right to due process guarantees under *Vitek*.

■ The Court nevertheless finds that in this case, there is insufficient factual evidence in the record before it for it to grant plaintiff judgment as a matter of law. To assist the parties with regard to the issue of whether this plaintiff can claim a violation of his liberty interest based on the due process clause itself, the Court will note that it is unclear, among other things, whether plaintiff "consented" to his transfer to Riverside; if he did, whether such consent vitiated his right under *Vitek* to due process protections; whether plaintiff was subjected to "treatment" at Riverside, and specifically while confined at 11–1–West; whether, with regard to his second claim, assuming his initial transfer to Riverside was proper, plaintiff's liberty interests were further implicated by defendants' decision to place him in 11–1–West as opposed to some other wing at Riverside; and whether plaintiff consented, or indeed was even able to consent, to treatment while at Riverside.

■ As I noted above, plaintiff may also be able to claim a liberty interest based on state law. Plaintiff argues in this regard that section 791.265b(3) of the Michigan Compiled Laws provides him with a protected liberty interest in not being transferred to Riverside absent a determination that he is "mentally or physically" disabled. Defendants respond that this section is inapplicable in this case. The parties' positions have created a factual issue that the Court cannot resolve on their motions for summary judgment. I will note that in addition to this statute, Michigan Department of Correction Policy Directives PD–DWA–42.04 and OP–BCF–42.02, attached to defendants' motion for summary judgment, indicate that there may exist other statutes or regulations that would create a protected liberty interest in the plaintiff. *See Hewitt*, 459 U.S. at 472–73, 103 S.Ct. at 871; *Baugh*, 604 F.Supp. at 1535–36 (prison regulation creates a "justifiable expectation by prisoners that they will not be transferred [to a prison mental

hospital] absent a finding that they are suffering from an acutely severe psychiatric disorder that cannot be treated in outpatient facilities"). It also is arguable that Director's Memorandum 1983–3, referred to above, created a protected liberty interest in plaintiff's behalf.

The second issue the Court will discuss is whether even assuming plaintiff's constitutional rights were violated, defendants can be held liable for such violations. Defendants apparently concede that defendants Bort and Lee can be held liable for any violations that may have occurred because of plaintiff's placement in 11–1–West without due process of law. They argue, however, that with regard to plaintiff's federal claims, none of the defendants can be held liable for any violations that may have occurred in connection with plaintiff's initial transfer to Riverside, and that defendants Johnson, Babcock, and Harness cannot be held liable for any violations that may have occurred in connection with plaintiff's placement in 11–1–West because such defendants did not personally approve or order such transfers or placements. As I indicated above, plaintiff's transfer to Riverside was ordered and approved by two persons who are not defendants before the Court.

 Defendants cannot be held liable under section 1983 on the basis of *respondeat superior. See Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). A plaintiff must show that the supervisory official "either encouraged the specific incident or misconduct or in some other way directly participated in it"; at a minimum he must show "that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir.1982); *see Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984). The Court finds that defendants have not shown that there exists no genuine issue as to whether they "implicitly authorized, approved, or knowingly acquiesced in the" constitutional violations plaintiff may have suffered. Defendants Johnson and Harness, who at the time relevant to this action were, respectively, the Director of the Michigan Department of Corrections and the Director of the Office of Health Care within the Department, can be held liable based on their failure to have established policies to ensure that prisoners such as plaintiff are not transferred to Riverside absent due process guarantees. Such failure could constitute an authorization or approval of the unconstitutional conduct.

Plaintiff's claim against defendant Babcock, who is the Director of the Department of Mental Health, is more tenuous but still viable. Riverside was licensed by the Department of Mental Health, and plaintiff therefore could hold defendant Babcock liable for failure to ensure that Riverside was operated in accordance with law. Defendant Babcock may be able to show that he had no statutory authority to order the Department of Corrections to ensure that prisoners are given due process guarantees prior to being sent to Riverside, and thus cannot be held liable for any constitutional deprivation plaintiff may have suffered. He has not yet done so, however, and his motion for summary judgment must be denied.

In summary, the Court finds that defendants probably violated plaintiff's constitutional rights by transferring him to Riverside absent due process of law, but that unresolved factual issues regarding, among other things, plaintiff's possible consent to such transfer prevent it from ruling on that issue. It also finds that there is an inadequate factual basis for it to determine whether plaintiff's placement in 11–1–West as opposed to some other wing at Riverside, assuming his initial transfer to Riverside was proper, impinged on his liberty interests. Resolution of the latter issue requires determinations of factual issues concerning the conditions present in 11–1–West and the scope of any consent plaintiff may have given to his transfer to Riverside.

The Court will enter an appropriate order in accordance with this opinion.