99 F.3d 1141
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William WEST, Plaintiff-Appellant,
v.
Harry RUSSELL, Defendant-Appellee.
 No. 95-3659.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1996.
 
 Before: KEITH, SILER, and BATCHELDER, Circuit Judges.
 PER CURIAM:
 
 
 1
 The plaintiff filed this § 1983 action in the United States District Court for the Southern District of Ohio. The district court dismissed it, and the plaintiff appeals. We affirm the judgment of the district court.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 Plaintiff William West is a prisoner at Lebanon Correctional Institution, Lebanon, Ohio, and the defendant, Harry Russell, is the warden.
 
 
 3
 In his complaint, the plaintiff makes several allegations, all involving his dissatisfaction with the prison's policies as they are applied to him relative to visitation. In particular, West complains that he has been denied any visitors while he was in disciplinary segregation, the prison's visitation schedule is inconvenient or impossible for his family members to comply with, and the warden has failed to respond to these complaints.
 
 
 4
 The district court, sua sponte, considered whether the action was frivolous under 28 U.S.C. § 1915(d), which allows the district court to dismiss an in forma pauperis action which is "frivolous or malicious." Citing Supreme Court and Sixth Circuit case law, the district court held, inter alia, that while a complaint dismissed for failure to state a claim under FED.R.CIV.P. 12(b)(6) is not necessarily frivolous, a claim is frivolous when "the plaintiff cannot make any claim with a rational or arguable basis in fact or law[,]" i.e., when the allegations are "wholly incredible." An action lacks a legal basis when "a plaintiff claims a violation of a legal interest which clearly does not exist."
 
 
 5
 The district court held that the denial of visitation violates neither the Eighth Amendment nor the Due Process Clause of the Constitution, but that the state may create a liberty interest in visitation by having statutes or regulations that place "specific substantive predicates upon a prison official's discretion and [which contain] specific mandatory language in connection with the substantive predicates." However, in Ohio the managing officer at each institution is specifically given broad discretion in regulating visitation. OHIO ADMIN.CODE § 5120-9-15(I). The court dismissed this action as frivolous because Ohio law creates no liberty interest in visitation and the plaintiff's claim therefore has no legal basis.
 
 II. DISCUSSION
 
 6
 We review the district court's dismissal under 28 U.S.C. § 1915(d) for an abuse of discretion. Denton v. Hernandez, 504 U.S. 25, 33, 112 S.Ct. 1728, 1734 (1992).
 
 
 7
 * As the district court recognized, there is a difference between dismissals for failure to state a claim under FED.R.CIV.P. 12(b)(6) and dismissals under 28 U.S.C. § 1915(d). See, e.g., Neitkze v. Williams, 490 U.S. 319, 326-28, 109 S.Ct. 1827, 1832-33 (1989).
 
 
 8
 Section 1915(d) is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.
 
 
 9
 Id. at 327, 109 S.Ct. at 1833.
 
 B
 
 10
 The district court relied on Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989), in which the Supreme Court stated that it cannot "seriously be contended ... that an inmate's interest in unfettered visitation is guaranteed directly by the Due Process Clause." The Court went on to hold that although the "denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause[,]" Thompson, 490 U.S. at 461, 109 S.Ct. at 1909 (internal citation omitted), "state law may create enforceable liberty interests in the prison setting." Id. "Stated simply, 'a State creates a protected liberty interest by placing substantive limitations on official discretion." Id. at 462, 109 S.Ct. at 1909 (citation omitted). The "most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decisionmaking, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." Id. (internal citation omitted). For regulations to create a liberty interest, they had to "contain 'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow...." Id. at 463, 109 S.Ct. at 1910. The district court correctly held that Ohio's regulations governing prison visitation do not create any liberty interest as defined by Thompson.[1]
 
 
 11
 Since the district court decided this case, however, the Supreme Court has handed down its opinion in Sandin v. Conner, --- U.S. ----, 115 S.Ct. 2293 (1995), in which it rejects the Court's previous holdings that search for mandatory language to determine whether liberty interests exists. See --- U.S. at ----, 115 S.Ct. at 2298-2300. Under Sandin, we "afford appropriate deference and flexibility to state officials trying to manage a volatile environment." --- U.S. at ----, 115 S.Ct. at 2299 (citations omitted). "Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life...." Id. (citations omitted).
 
 
 12
 States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.
 
 
 13
 Id. at ----, 115 S.Ct. at 2300 (citations omitted). The Court recalled that not every "state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause...." Id. (citations omitted). Although
 
 
 14
 prisoners do not shed all constitutional rights at the prison gate, ... lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.
 
 
 15
 Id. at ----, 115 S.Ct. at 2301 (internal brackets, quotation marks and citations omitted).[2]
 
 
 16
 Sandin has made it more difficult for prisoners to file particular § 1983 claims. In this action, there is, for example, no indication of any restraint on the prisoner which so unexpectedly exceeds his sentence that it gives rise to a Due Process Clause claim, and which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at ----, 115 S.Ct. at 2300. What West has endured does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at ----, 115 S.Ct. at 2301. Nor does it "inevitably affect the duration of his sentence." Id. at ----, 115 S.Ct. at 2302.
 
 
 17
 There being no other part of the Constitution, such as the Eighth Amendment, allowing him the visitation he desires, see, e.g., Bellamy v. Bradley, 729 F.2d 416, 420 (6th Cir.) ("Limitations upon visitation may be imposed if they are necessary to meet penological objectives such as the rehabilitation and the maintenance of security and order." (citation omitted)), cert. denied, 469 U.S. 845 (1984), the district court did not abuse its discretion in dismissing this action as frivolous.
 
 III. CONCLUSION
 
 18
 For the foregoing reasons, we AFFIRM the district court's dismissal of this action.
 
 
 
 [1]
 OHIO ADMIN.CODE § 5120-9-15 governs prison visitation in Ohio. State ex rel. Manson v. Morris, 66 Ohio St.3d 440, 442, 613 N.E.2d 232, 234 (Ohio 1993). At Ohio prisons,
 the managing officer at each institution shall have broad discretion in regulating the following: the number of visitors allowed to visit an inmate at any one time; the frequency, duration and priority of visits; the visiting hours. Guidelines for these factors will be established by the managing officer and may vary to accommodate interests of institutional security and orderly operations.
 OHIO ADMIN.CODE § 5120-9-15(I) (emphasis added). "Inmates in disciplinary control may be visited only with the permission of the managing officer or his designee." Id. § (K). This regulation meets none of the Thompson requirements. Cf. Morris, 66 Ohio St.3d at 442, 613 N.E.2d at 234 (holding that OHIO ADMIN.CODE § 5120-9-15(C), which recognizes that certain visitors may be excluded, permits a former prison guard to be prohibited from visiting a prisoner).
 
 
 [2]
 The Sandin Court held that the prisoner's
 discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody.
 --- U.S. at ----, 115 S.Ct. at 2301. Nor did "the State's action ... inevitably affect the duration of his sentence." Id. at ----, 115 S.Ct. at 2302. "The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." Id.