The **ESTATE OF Joshua L. BROUHARD,** Deceased, By and Through Sandra L. BROUHARD and Donald R. Brouhard, Co–Personal Representatives, Plaintiff,

v.

**THE VILLAGE OF OXFORD and Oxford Township, Chief Gary Ford, Officer Robert Alonzi, Officer Gulda, Officer Ostrander and Other Unknown Officers,** Defendants.

No. 97–CV–72384–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 29, 1997.

**840**

Larry Barnett, Waterford, MI, for Plaintiff.

Robert L. Bunting, Oxford, MI, John H. Dise, Jr., Detroit, MI, S. Randall Field, Farmington Hills, MI, for Defendants.

### OPINION

DUGGAN, District Judge.

On April 29, 1997, plaintiff filed the present action in the Oakland County Circuit Court. Defendants filed a notice of removal on May 21, 1997 on the basis of the federal claims asserted by the plaintiff in his original complaint. Currently before the Court is defendants' motion for summary judgment. Plaintiff has filed a brief in opposition to defendants' motion. For the reasons presented herein, the Court grants defendants' motion for summary judgment as to Counts VII and VIII of the complaint, dismisses defendants' Gulda and Ostrander, dismisses plaintiff's claims for false arrest and false imprisonment, and remands the remainder of plaintiff's claims to the Oakland County Circuit Court.[1]

### Background

On January 24, 1997, officers of the Oxford Township Police Department were dispatched to a lake access in Oxford Township based on a report of a fight involving eight to ten teenage boys. Upon arriving at the scene, defendant Officer Robert Alonzi observed three vehicles attempting to leave the area. Officer Alonzi secured the area by parking his police vehicle so as to prohibit the vehicles from exiting the area. Officer Lotz subsequently arrived on the scene to assist Officer Alonzi.[2] Upon Lotz's arrival, Officer Alonzi ordered plaintiff's decedent, Joshua Brouhard, out of the vehicle after observing a red hatchet and a can of mace spray on the floor of the vehicle. Officer Alonzi restrained Brouhard in handcuffs and placed Brouhard in the back of Lotz's vehicle.

Plaintiff provides the sworn affidavits of Nicholas Dissmore and Jerry Stetkewycz, two individuals also detained at the scene. Dissmore states that upon Alonzi's arrival at the Brouhard vehicle he yelled at Brouhard "You stupid mother fucker." Stetkewycz states that upon Officer's Alonzi's approach of the Brouhard vehicle, he heard Alonzi

---

1. At the hearing held on defendants' motion for summary judgment on December 17, 1997, plaintiff agreed to the dismissal of defendants Gulda and Ostrander, and to the dismissal of the previously asserted claims of false imprisonment and false arrest.

2. In the complaint filed by plaintiff Officer Lotz is not a named defendant in the case caption. However, at the December 17, 1997 hearing, counsel for plaintiff indicated that Officer Lotz is the defendant referred to in the caption of the complaint as "Unknown Officer."

order Brouhard to "Get out of the car you fat fuck". Officer Alonzi, when asked whether or not he swore at plaintiff's decedent stated "I may or may not have." Officer Alonzi also added "As a matter of course, police officers swear all the time. I may or may not have." According to Dissmore, Mr. Brouhard became visibly upset and began to cry.

Upon placing Brouhard in Lotz's vehicle, Alonzi contacted dispatch for verification of Brouhard's driver's license. A check of Brouhard's licence revealed a suspension for "FCJ". Alonzi issued Brouhard a citation for driving while his licence was suspended pursuant to M.C.L.A. § 257.904. Ostrander stated that he then removed the handcuffs and informed Brouhard that he would not be going to jail, but would be receiving a ticket. Lotz then testified that when he returned to his vehicle and noticed Brouhard in the backseat, he inquired of Alonzi as to what he should do with Brouhard. Lotz testified that Alonzi replied "Take him to M–24 and Drahner and let him walk his fat ass home." Lotz further testified that this statement was out of the hearing of Joshua Brouhard.

Lotz then provided Brouhard with a ride to his home. At Brouhard's request, Lotz drove Brouhard to an intersection approximately three blocks from his home and dropped him off. On January 26, 1997, a jogger discovered Brouhard's body hanging from a tree in a remote area near Brouhard's home.

### *Discussion*

In his complaint against the various defendants, plaintiff asserts the following claims: Count I—False Imprisonment; Count II—False Arrest; Count III—Intentional Infliction of Emotional Distress; Count IV—Gross Negligence as to individual officers; Count V—Ultra Vires Activity—Individual Officers; Count VI—Ultra Vires Activity—Village of Oxford and Oxford Township; Count VII—Section 1983 Civil Rights Violations—Individual Officers; and Count VIII—Chief Ford—Section 1983 Civil Rights Violations.

The Court held a hearing on defendants' motion for summary judgment on December 17, 1997. At this hearing counsel for plaintiff

identified his federal claims as follows. Plaintiff states that Count VII of his complaint states a claim against Officers Alonzi and Lotz for violating plaintiff's "substantive due process" rights as identified in *Lillard v. Shelby County Board of Education,* 76 F.3d 716 (6th Cir.1996). The second of plaintiff's claims is set forth in Count VIII and is characterized by plaintiff as an allegation that Chief Ford failed in his obligation to provide adequate training to individual police officers Alonzi and Lotz and that this conduct was reckless, intentional, and/or grossly negligent, and thus constitutes the deprivation of plaintiff's federal constitutional rights under *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412.

Plaintiff asserts that the officers' conduct during their encounter with plaintiff's decedent constituted an intentional and malicious injury of plaintiff's decedent which "shocks the conscience" and thus violated plaintiff's federal constitutional rights by causing him emotional and psychological harm. In support of its position, plaintiff refers the Court to the Sixth Circuit's recent decision in *Lillard v. Shelby County Board of Education, supra.* In *Lillard,* the Sixth Circuit determined that substantive due process violations essentially fall into two categories:

> The first type includes claims asserting denial of a right, privilege, or immunity secured by the Constitution or by federal statute other than procedural claims under the Fourteenth Amendment simpliciter
>
> The other type of claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them. The test for substantive due process claims of this type is whether the conduct complained of "shocks the conscience" of the court.

*Lillard,* 76 F.3d at 724. *Lillard* involved three high schools girls who brought claims against a teacher pursuant to Title IX, and § 1983 for violations of the First and Fourteenth Amendments. The Court, in dismissing two of the girls claims against the teacher, applied the "shocks the conscience standard" but found that the teacher's slap of one girl and verbal harassment[3] of the

---

**3.** In *Lillard,* the plaintiffs alleged that the teacher "abused, humiliated, and intimidated (the female

student) in a number of ways, including staring

other girl fell short of "brutal" or "inhumane" acts so vicious as to constitute a violation of substantive due process.

In the *Lillard* opinion, the Sixth Circuit discussed at length its prior opinion in *Webb v. McCullough*, 828 F.2d 1151 (6th Cir.1987), in which the Court found that a student's substantive due process rights may have been violated where a principal used excessive force against her in a disciplinary context. The significant aspect of the *Webb* opinion is the language utilized by the Court to frame the substantive due process inquiry:

> The substantive due process inquiry ... must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amount to a brutal and inhumane abuse of official power literally shocking to the conscience.

*Webb,* 828 F.2d at 1158.

This Court does not believe that the "intentional and malicious" actions of the police officers which plaintiff asserts occurred during the course of Officers Alonzi's and Lotz's encounter with plaintiff's decedent meets the "shocks the conscience" standard for a substantive due process violation pursuant to § 1983. While such conduct, if true, is clearly unacceptable conduct, it is not conduct which rises to the level of a federal constitutional violation. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (plaintiff's claim of injury to his reputation was insufficient to state a deprivation of liberty necessary for § 1983 claim); *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir.1987) (plaintiff's allegations of "verbal abuse," "harassment," or "arbitrariness" insufficient for § 1983 claim); *Oltarzewski v. Ruggiero* 830 F.2d 136 (9th Cir.1987); *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979) ("verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983"); *Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir.1985); *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.), *cert. denied,* 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983). Further, the Sixth Circuit has "expressed doubt about the utility of

the 'shocks the conscience' standard in any arena other than that of excessive force." *Lillard,* 76 F.3d at 725; *See, e.g. Cassady v. Tackett,* 938 F.2d 693, 698 (6th Cir.1991) *citing Braley v. City of Pontiac,* 906 F.2d 220, 224–25 (6th Cir.1990); *Mansfield Apt. Owners v. City of Mansfield,* 988 F.2d 1469, 1478 (6th Cir.1993); *Bettio v. Village of Northfield,* 775 F.Supp. 1545, 1555 (N.D.Ohio 1991). In absence of existing precedent expanding the scope of a substantive due process to encompass excessive non-physical force claims, the Court declines to find a substantive due process violation in this context.

In sum, the Court does not believe that the verbal conduct of the defendants constitutes a violation of plaintiff's "substantive due process" rights as contemplated by the Sixth Circuit in its decision in *Lillard, supra.*

■ Moreover, the Court finds that even if defendants' conduct was deemed sufficient to constitute a violation of Joshua Brouhard's federal constitutional rights, plaintiff has produced no evidence which would be sufficient to establish a causal relationship between the alleged wrongful conduct by the officers and the suicide of Joshua Brouhard. Generally, a decedent's suicide is considered an unforeseeable intervening act between the defendants' conduct and the decedent's death. *See Scheffer v. Railroad Company,* 105 U.S. (15 Otto) 249, 252, 26 L.Ed. 1070 (1881); *Watters v. T.S.R., Inc.,* 904 F.2d 378, 383 (6th Cir. 1990). Although the courts have recognized an exception to this general rule "where a decedent was delirious or insane and either incapable of realizing the nature of this act or unable to resist an impulse to commit it," *Watters,* 904 F.2d at 384 (citing *Restatement (Second)* of Tort Section, 455 (1965)), plaintiff has offered no evidence whatsoever which would allow a jury to conclude that this "exception" is applicable in this case. *See also, Jamison v. Storer Broadcasting Co.,* 511 F.Supp. 1286, 1291 (E.D.Mich.1981).

For the reasons set forth above, defendant officers' motion for summary judgment as to plaintiff's federal constitutional claims shall be granted and the federal claims against the officers shall be dismissed.

at her, making "kissing" noises, and generally insulting her."   76 F.3d at 720.

■ With regard to Count VIII, plaintiff argues that Chief Ford is liable under *City of Canton v. Harris* for what plaintiff characterizes as a "complete failure to train the officers relative to public relations and civil rights." The Supreme Court in its seminal decision regarding the imposition of municipal liability, *Monell v. Dept. of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), determined "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflict the injury that the government as an entity is responsible ... under § 1983." 98 S.Ct. at 2038. Subsequently, in *Canton v. Harris,* the Supreme Court arguably expanded the scope of municipal liability under § 1983 by holding a municipality accountable where a complete failure to train on the part of a municipality "reflects deliberate indifference to the constitutional rights of its inhabitants." 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Plaintiff argues that liability is appropriate in this context because all of the officers uniformly testified that they received no formal training from the police chief relative to "public relations and civil rights." Defendant responds that neither the police chief nor the City of Oxford has any duty to provide "public relations" courses to its officers and therefore cannot be held accountable under *Monell* and its progeny. The Court finds that plaintiff's *"Monell"* claim against Chief Ford (and the "municipalities") shall also be dismissed. Plaintiff has not pointed to any evidence which would permit a jury to find that Chief Ford (or the municipalities) breached any duty to train.[4] Furthermore, this Court has determined that: (1) plaintiffs have not established a constitutional violation by the officers; and/or (2) plaintiffs cannot establish a proximate causal relationship between such conduct and the suicide of Joshua Brouhard, therefore plaintiffs cannot establish a *"Monell"* claim against Chief Ford or the "municipalities" for failure to train. The Court finds that unless such "failure to train" caused the constitutional violation which harmed the plaintiff, there can be no liability against the municipality for the alleged "failure to train."

Accordingly, plaintiff's *"Monell"* claim against Chief Ford and/or the "municipalities" shall be dismissed.

For the reasons set forth above and at the hearing held on December 17, 1997, all of plaintiff's federal claims shall be dismissed.

■ Having dismissed the federal claims which, arguably, were asserted by plaintiff, this Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. Plaintiff's state law claims were brought into this Court under the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367(a). In cases where an action was originally filed in federal court and pendent state law claims were included, the Sixth Circuit has repeatedly indicated that once the federal claims in an action have been dismissed prior to trial, it is generally proper for the district court to order the pendent state law claims dismissed without prejudice so that they may be pursued in an appropriate state forum. In sum, such state law claims should be "dismissed without prejudice once [a] plaintiff's federal jurisdictional claim[s] [have been] held to be inappropriate." *Whittington v. Milby,* 928 F.2d 188, 194 (6th Cir. 1991), *cert. denied,* 502 U.S. 883, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991) *(quoting Collard v. Kentucky Bd. Of Nursing,* 896 F.2d 179, 184 (6th Cir.1990)). *See also Heussner v. National Gypsum Co.,* 887 F.2d 672, 677 (6th Cir.1989).

This outcome results from the Supreme Court's view that supplemental jurisdiction is discretionary, *see United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966),[5] and the

---

**4.** The Supreme Court in *City of Canton v. Harris* held "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412.

**5.** The *Gibbs* Court stated:

... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

Sixth Circuit's view that the discretion to decide state law claims on the merits once the federal claims are dismissed prior to trial is minimal. *See Province v. Cleveland Press Publishing Co.*, 787 F.2d 1047, 1055 (6th Cir.1986). Discretion in favor of deciding pendent state law claims once the federal claims have been dismissed should be exercised only when "*overwhelming* interests in judicial economy" exist. *Id.* (emphasis added). *See Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir.1993).

In *Hankins v. The Gap, Inc.*, 84 F.3d 797 (6th Cir.1996), the Sixth Circuit stated:

> This court has further instructed district courts, before deciding whether to retain jurisdiction over the state claims, to "consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182. In addition, this court has stated that "generally, 'if the federal claims are dismissed before trial ... the state claims should be dismissed as well.'" *Id.* (citation omitted.) ... Discovery has been completed in this case, and there is no reason to think that any additional discovery will be necessary [if this case is remanded to the] state court.

*Id.* at 802–803.

In this Court's opinion, plaintiff's claims are primarily and substantially state law claims and the federal claims were simply added as additional counts. Further, as this Court has indicated, it is difficult from a reading of the complaint to ascertain exactly what federal claims plaintiff is asserting.

Therefore, in the opinion of this Court, this is the "classic" case which should be tried in the state court. Conducting the trial of this action in the state court will not result in any "multiplicity of litigation" and will avoid this Court "needlessly deciding state law issues." *Id.*

The Court, therefore, shall exercise its discretion and remand the state law claims to the Oakland County Circuit Court.

383 U.S. at 726, 86 S.Ct. at 1139 (citation omit-

An Order consistent with this Opinion shall issue forthwith.